**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

AMANDA E.[1]
o/b/o of L.J.E., a minor,
    Plaintiff,

    vs.

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant.

Case No. 2:21-cv-5574

Graham, J.

Litkovitz, M.J.

**REPORT AND
RECOMMENDATION**

       Plaintiff Amanda E., on behalf of L.J.E., a minor, brings this action under 42 U.S.C. §

405(g) for judicial review of the final decision of the Commissioner of Social Security

(Commissioner) denying L.J.E.'s application for Supplemental Security Income (SSI).  This

matter is before the Court on plaintiff's Statement of Errors (Doc. 9), the Commissioner's

response, (Doc. 10), and plaintiff's reply (Doc. 12).

**I.  Procedural Background**

       Plaintiff is L.J.E.'s mother and legal guardian, who protectively filed an application for

SSI on L.J.E.'s behalf on October 15, 2019, alleging that L.J.E. was disabled beginning

September 1, 2019 due to an adjustment disorder with mixed disturbance of emotions and

conduct, sexual abuse, a learning disorder, oppositional defiant behavior disorder (ODD), and

post-traumatic stress disorder (PTSD).  (Tr. 117, 249).  L.J.E.'s application was denied initially

and on reconsideration.  Plaintiff thereafter requested and received a *de novo* hearing by

Administrative Law Judge (ALJ) William R. Stanley.  Plaintiff and L.J.E. appeared and testified

at the ALJ hearing on January 21, 2021 via telephone.  (Tr. 81-115).  On February 9, 2021, the

ALJ issued a decision denying L.J.E.'s application for benefits.  (Tr. 35-54).  The Appeals

---

[1] Pursuant to General Order 22-01, due to significant privacy concerns in social security cases, any opinion, order, judgment or other disposition in social security cases in the Southern District of Ohio shall refer to plaintiffs only by their first names and last initials.

Council denied plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner.  (Tr. 1-6).

## II.  Analysis

### A.  Legal Framework for Disability Determinations

To qualify for SSI as a child under the age of 18, a claimant must file an application and be an "eligible individual" as defined in the Act.  42 U.S.C. § 1382(a); 20 C.F.R. § 416.202. Eligibility is dependent upon disability, income, and other financial resources.  *Id.*  An individual under the age of 18 is considered disabled for purposes of SSI "if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 1382c(a)(3)(C)(i).

The Social Security regulations set forth a three-step sequential analysis for determining whether a child is disabled for purposes of children's SSI benefits:

> 1. Is the child is engaged in any substantial gainful activity?  If so, benefits are denied.
>
> 2. Does the child have a medically severe impairment or combination of impairments?  If not, benefits are denied.
>
> 3. Does the child's impairment meet, medically equal, or functionally equal any of the Listing of Impairments, Appendix I of 20 C.F.R. pt. 404, subpt. P. 20 C.F.R. § 416.924(a)?  If so, benefits are granted.

20 C.F.R. § 416.924(a)-(d).[2]

In determining whether a child's impairments functionally equal a Listing, the adjudicator must assess the child's functioning in six domains:

---

[2] Plaintiff challenges only the ALJ's finding that L.J.E. did not functionally equal any of the Listings.  Any argument as to whether L.J.E. met or medically equaled any Listing is therefore waived.  *See Kuhn v. Washtenaw Cnty.*, 709 F.3d 612, 624 (6th Cir. 2013) ("This court has consistently held that arguments not raised in a party's opening brief, as well as arguments adverted to in only a perfunctory manner, are waived.") (citation omitted).

1. Acquiring and using information;

2. Attending and completing tasks;

3. Interacting and relating with others;

4. Moving about and manipulating objects;

5. Caring for yourself; and

6. Health and physical well-being.

*Id.* at § 416.926a(b)(1)(i)-(vi).  To functionally equal a Listing, an impairment(s) must result in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain. *Id.* at § 416.926a(d).  *See also id.* at § 416.924(d) ("An impairment(s) causes marked and severe functional limitations if it . . . functionally equals the listings.").  Relevant factors to this evaluation are (1) how well the child initiates and sustains activities, how much extra help she needs, and the effects of structured or supportive settings; (2) how the child functions in school; and (3) the effects of the child's medications or other treatment.  *Id.* at § 416.926a(a)(1)-(3).

An individual has a "marked" limitation when the impairment "interferes seriously with [the] ability to independently initiate, sustain, or complete activities."  *Id.* at § 416.926a(e)(2)(i). A "marked" limitation is "more than moderate" but "less than extreme."  *Id.*  "Marked" limitation is consistent with "standardized testing . . . scores that are at least two, but less than three, standard deviations below the mean."  *Id.*  An individual has an "extreme" limitation when the impairment "interferes very seriously with [the] ability to independently initiate, sustain, or complete activities" and connotes the "worst limitations."  *Id.* at § 416.926a(e)(3)(i).  Day-to-day functioning may be "very seriously limited" when only one activity is limited by the impairment or when several activities are limited by the impairment's cumulative effects.  *Id.*  "Extreme"

3

limitation is consistent with "standardized testing . . . scores that are at least three standard deviations below the mean." *Id.*

If the child's impairment functionally equals an impairment in the Listings, and if the impairment satisfies the Act's duration requirement, then the child is considered disabled. *Id.* at § 416.924(d)(1). If both of these requirements are not satisfied, then the child is not considered disabled. *Id.* at § 416.924(d)(2).

### B.  The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process under the child disability standards and made the following findings of fact and conclusions of law:

1. [L.J.E.] was born . . . [in] 2010. Therefore, she was a school-age child on October 15, 2019, the date application was filed, and is currently a school-age child (20 CFR 416.926a(g)(2)).

2. [L.J.E.] has not engaged in substantial gainful activity since October 15, 2019, the application date (20 CFR 416.924(b) and 416.971 *et seq.*).

3. [L.J.E.] has the following severe impairments: depressive disorder; bipolar disorder; and oppositional defiant behavior disorder (20 CFR 416.924(c)).

4. [L.J.E.] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.924, 416.925 and 416.926).

5. [L.J.E.] does not have an impairment or combination of impairments that functionally equals the severity of the listings (20 CFR 416.924(d) and 416.926a).

6. The undersigned finds that [L.J.E.] has not been disabled, as defined in the Social Security Act, since October 15, 2019, the date the application was filed (20 CFR 416.924(a)).

(Tr. 39-49).

### C.  Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by

substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, __ U.S. __, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen,* 478 F.3d at 746).

### D. Specific Errors

First, plaintiff argues that the ALJ erred in determining that L.J.E. had less than marked limitations in the domains of attending and completing tasks and interacting and relating to others.[3] Second, plaintiff argues that the Appeals Council erred by not exhibiting a February 9, 2021 assessment from L.J.E.'s treating therapist Cassandra Sansone, MSW/LSW. Third,

---

[3] As plaintiff addresses only these two functional domains, any challenges related to the other functional domains are waived. *See Kuhn*, 709 F.3d at 624.

plaintiff argues that the ALJ failed to adhere to 20 C.F.R. § 416.920c[4] in his analysis of an opinion from L.J.E.'s school psychologist Nancy Weeks.

       1. Functional domains

          a. *Attending and completing tasks*

The ALJ found that L.J.E. had a less than marked limitation in this functional domain based on the following analysis:

> Although [L.J.E.] has been diagnosed with oppositional defiant behavior, the record shows that she has received sporadic and conservative treatment with signs of improvement. Furthermore, while the undersigned does appreciate that [L.J.E.] gets bored and depressed, at times, she has shown that she has the ability to attend and complete tasks. For example, [L.J.E.]'s report card for school year 2019/2020 (2nd semester) revealed the following percentages: General Science-94%; Language Arts-90%; Math-92%; Social Studies-96%; and Spelling-81% [Tr. 467].
>
> Additionally, upon evaluation in November 2019, the following relatively unremarkable psychiatric mental examination findings were reported:
>
> > Oriented to time, place, person & situation. No agitation. No anhedonia. Not anxious. Appropriate mood and affect. Behavior is appropriate for age. No compulsive behavior. Sufficient fund of knowledge. Sufficient language. Not fearful. No flight of ideas. Not forgetful. No hallucinations. Appropriate affect. No increased activity. No memory loss. No mood swings. Not paranoid. Normal attention span and concentration. No pressured speech. No suicidal ideation [Tr. 339].
>
> More recently, in November 2020, progress notes from Harmony House indicated that [L.J.E.] was hyperactive but appeared healthy and playful. Her speech was normal and her mood was appropriate. There were no perceptual abnormalities evidenced and [L.J.E.]'s cognition was "intact." Adherence to therapy was recommended as [L.J.E.]'s mental health symptoms continued to stabilize [Tr. 606-07].

(Tr. 45).

---

[4] Though plaintiff's memoranda refer to 20 C.F.R. § 404.1520c, the Court presumes that she intends to refer to the identical SSI regulation.

Plaintiff argues that the ALJ cherry-picked from L.J.E.'s medical records to find a less than marked limitation in this functional domain. Plaintiff points to records from social worker Cassandra Sansone reflecting difficulties with concentration and comprehension (*see* Tr. 350, September 2019 ("difficulty concentrating & sitting still in class, comprehension issues"); Tr. 631, September 2020 (intervention specialist reported to Ms. Sansone that L.J.E. was having "a very difficult time keeping up due to extreme impulsivity & constant talking to self & others . . . with redirection being minimally effective for very short periods of time."); Tr. 642, October 2020 ("impulsivity, limited attention & focus, & rapid thinking/speech" with "[r]edirection needed often & effective for only short amounts of time"). Plaintiff also highlights the fact that L.J.E.'s October 2020 Individualized Education Program (IEP) noted that L.J.E. was "easily distracted[,]" "struggle[d] to stay on-task[,]" sometimes "refuse[d] to do . . . assignment[s,]" and "need[ed] 8 prompts to complete a given task[.]" (Tr. 544).[5]

Plaintiff also highlights various academic progress markers consistent with greater limitation in this functional domain. (*See* October 2020 IEP at Tr. 544 (reading at a second grade level in the fourth grade) and Tr. 545 (STAR math assessment score at a 1.9 grade level); March 2020 Evaluation Team Report (ETR) at Tr. 521-22 (intervention specialist Marybeth Bell recorded below grade level performance in all academic skills with urgent intervention recommended in reading and math based on February 2020 STAR assessments) and Tr. 571 and 589 (school psychologist Nancy Weeks recording low average performance on verbal comprehension and processing speed on the Weschler Intelligence Scale for Children, Fifth Ed. and narratively describing significant weaknesses in reading, writing, and math).

---

[5] Plaintiff also references a record not exhibited by the ALJ (Tr. 55) and deemed immaterial by the Appeals Council. (Tr. 2). The Court cannot consider this record. *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996) (citing *Cotton v. Sullivan*, 2 F.3d 692, 695-96 (6th Cir. 1993)). *See also infra* p. 14.

Plaintiff also emphasizes that Social Security Ruling (SSR)[6] 09-1p directs the ALJ to consider any support that a child applicant receives relative to functional domains:

> In general, if a child needs a person, medication, treatment, device, or structured, supportive setting to make his functioning possible or to improve the functioning, the child will not be as independent as same-age peers who do not have impairments. Such a child will have a limitation, even if he is functioning well with the help or support.

SSR 09-1p, 2009 WL 396031, at *6. *See* 20 C.F.R. § 416.924a(b)(5).

The Commissioner argues in response that the ALJ acknowledged some limitation in this functional domain, but he pointed to other evidence reflecting normal functioning. (*See* Tr. 44 ("[L.J.E.] regularly studies her lessons"), also referring to Tr. 344, October 2019 record from Ms. Sansone (L.J.E. fully oriented with a euthymic mood); Tr. 45, referring to Tr. 339, November 2019 record from psychiatrist Maria Moreno (no psychiatric abnormalities, including those related to attention and concentration) and Tr. 606-07, November 2020 note from social worker Kaytlyn Lanning (normal speech, appropriate mood, intact cognition, and no perceptual abnormalities)). The Commissioner also argues that the ALJ noted L.J.E.'s limited treatment with signs of improvement and 2019/2020 academic record as indicative of less limitation in this functional domain. (*See id*, referring to Tr. 467 (marks of 81% and above in all subjects)).

Reviewing the records cited by the ALJ, the Court concludes that the ALJ's determination that L.J.E. had a less than marked limitation in the domain of attending and completing tasks is not supported by substantial evidence. In the part of his decision specifically discussing attending and completing tasks, the ALJ references "sporadic and conservative treatment with signs of improvement" without further supporting explanation or record

---

[6] "Social Security Rulings do not have the force and effect of law, but are 'binding on all components of the Social Security Administration' and represent 'precedent final opinions and orders and statements of policy and interpretations' adopted by the Commissioner." *Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 272 n.1 (6th Cir. 2010) (quoting 20 C.F.R. § 402.35(b)(1)).

reference.  Otherwise, the ALJ refers to three specific records.  First, the ALJ references a third

grade report card demonstrating L.J.E.'s primarily above average academic performance.  (Tr.

45, referring to Tr. 467).  The ALJ does not reference in this section, however, considerable

individualized supports that L.J.E. was receiving to achieve this result.  (*See, e.g.*, Tr. 522

(March 2020 ETR note from intervention specialist that L.J.E. "benefits from small group

instruction with less distractions and more redirections" and "a slower pace"); Tr. 551 (October

2020 annual IEP review describing that L.J.E. would receive specially designed instruction in

reading, written expression, and math calculation; accommodations including small-group

settings, directions and questions read to her, questions rephrased and repeated, extended time,

and manipulatives; and modified curriculum)).  Elsewhere in his decision, the ALJ makes two

references to L.J.E's IEP (*see* Tr. 43, 46) without indication that he considered the supports

described therein.  *See* SSR 09-1p, 2009 WL 396031, at *6 ("[I]f a child needs a . . . structured,

supportive setting to . . . improve . . . functioning, the child will not be as independent as same-

age peers who do not have impairments.  Such a child will have a limitation, even if he is

functioning well with . . .  support.").  While the Court acknowledges that the ALJ was not

required to discuss every piece of evidence, *see Boseley v. Comm'r of Soc. Sec.*, 397 F. App'x

195, 199 (6th Cir. 2010), his decision offers little indication that the fact of L.J.E.'s academic

supports factored into his decision.

The ALJ's next specific reference is to a November 2019 record from psychiatrist Dr.

Moreno showing no psychiatric abnormalities on examination.  (Tr. 45, referring to Tr. 339).

While the quoted portion of the record appears to support the ALJ's determination, when read in

the context of the full record, it is clear that Dr. Moreno lacked information on which to base her

assessment.  (*See* Tr. 336 ("The chief complaint is not clear."), Tr. 337 ("Mom is not very forth

coming [sic] with some information."), and Tr. 339 ("[W]ill obtain collateral information from BCAP" at one-month follow-up visit)).

The ALJ's last specific reference is to a November 2020 record of a mental health session with social worker Kaytlyn Lanning from Harmony House.  The ALJ refers to the record as showing that L.J.E. appeared "healthy and playful" with normal mood and speech and no perceptual abnormalities despite also displaying "hyperactiv[ity]."  (Tr. 45, referring to Tr. 606-07).  The ALJ omits references in this record, however, to "[e]vasive[ness]" and "[d]istractibility"—both of which more closely relate to the functioning contemplated by the domain of attending and completing tasks than the notes highlighted by the ALJ.  (Tr. 606).  *See* SSR 09-4p, 2009 WL 396033, at *5 (explaining that a child's ability to, *inter alia*, focus, follow directions, concentrate, transition activities without distraction to self or others, and sustain attention are relevant to functioning in this domain); 20 C.F.R. § 416.926a(h)(2)(iv) (same). Moreover, the ALJ concludes his analysis of this record by stating: "[a]dherence to therapy was recommended as the [L.J.E.]'s mental health symptoms continued to stabilize[.]"  (Tr. 45).  It is not clear to the Court how this record demonstrates that L.J.E.'s mental health "continued to stabilize[.]".  (Tr. 45; *see* Tr. 605-08).

The ALJ's discussion of evidence relevant to the attending and completing tasks functional domain in other parts of his decision does not alter the Court's conclusion.  In the section on acquiring and using information, the ALJ stated that L.J.E. "regularly studies her lessons[,]" when L.J.E. actually testified: "sometimes I study. . . ."  (*Compare* Tr. 44 *with* Tr. 108).  The ALJ also referenced an October 15, 2019 session with L.J.E.'s treating therapist, Ms. Sansone, at which L.J.E. exhibited impulsive behavior but also concrete thought content, no perceptual disturbances, normal orientation, and a euthymic mood (*see* Tr. 44, referring to Tr.

344).  That same record, however, notes L.J.E.'s unusual/bizarre/impoverished thinking, incongruent affect, impaired judgment, limited insight, and that L.J.E. had "difficulty staying on task" with "flight of ideas[.]"  (Tr. 344-45).  Any of these observations, which were *not mentioned* by the ALJ, are significantly more relevant to his consideration of the attending and completing tasks domain than the observations he elected to reference.  *See* SSR 09-4p, 2009 WL 396033, at *5 (explaining that a child's ability to, *inter alia*, focus, follow directions, concentrate, transition activities without distraction to self or others, and sustain attention are relevant to functioning in this domain); 20 C.F.R. § 416.926a(h)(2)(iv) (same).  In the section on interacting and relating with others, the ALJ referenced an August 2020 visit with Ms. Sansone and her notes that L.J.E. had a euthymic mood, congruent affect, was oriented, and demonstrated concrete thinking.  (Tr. 46, referring to Tr. 617).  The ALJ omits reference, however, to Ms. Sansone's observations that L.J.E.'s behavior was impulsive, with rapid stream of thought and limited insight.  (Tr. 617).

In sum, the ALJ did not fairly characterize the records that he referenced in support of his conclusion that L.J.E. had a less than marked limitation in this functional domain.  While the distinction between such "cherry-picking" and weighing evidence can be a fine one, the Court's review of the records referenced by the ALJ leaves it convinced that the former occurred in this case.  *Cf. Coppage v. Berryhill*, No. 1:16-cv-144, 2017 WL 8640926, at *4 (W.D. Ky. Aug. 11, 2017) ("[A]n ALJ has a duty not to cherry-pick facts from the record to support a finding of not disabled where a finding of disabled would otherwise be appropriate. . . .  However, an ALJ does not cherry-pick the record simply by resolving discrepancies in the record against the claimant.") (citing *Smith v. Comm'r of Soc. Sec.*, No. 1:11-cv-2013, 2013 WL 943874, at *6 (N.D. Ohio, March. 11, 2013)), *report and recommendation adopted*, 2018 WL 305336 (W.D.

Ky. Jan. 5, 2018). Therefore, the Court finds that the ALJ's decision with respect to the domain

of attending and completing tasks was not based on substantial evidence.

> b. *Interacting and relating with others*

The ALJ found that L.J.E. had a less than marked limitation in this functional domain

based on the following analysis:

> On August 19, 2020, [L.J.E.'s] therapy notes from Southeast Healthcare revealed
> the following:
>
>> Interactive, talkative. Shared "sad" feelings about mom's decision for
>> remote learning due to "not getting to see my friends & there's a boy who
>> wants to be my boyfriend." Support provided to mom, first part of session,
>> with concerns about remote learning addressed. [Tr. 618].
>
>> [Ms. Sansone] added that [L.J.E.'s] mom was "actively involved" and that
>> [L.J.E.] continued in a school-based therapy program with an IEP in place [Tr.
>> 618]. Upon exam, Ms. Sansone reiterated that [L.J.E.'s] mood was euthymic and
>> affect, "congruent." [L.J.E.] was oriented x3 and demonstrated "concrete
>> thinking" throughout the session [Tr. 617].
>
>> Furthermore, the undersigned appreciates that in [L.J.E.'s] function report, it was
>> noted that she routinely socializes with family and friends and generally gets
>> along well with others (teachers, other adults, etc.). Ms. Everson also reported
>> that [L.J.E.] somewhat accepts criticism/correction and obeys safety rules
>> presented to her [Tr. 231-44].

(Tr. 46).

Here, too, plaintiff argues that the ALJ cherry-picked from the record to reach his

determination on this functional domain. Plaintiff highlights the Function Report, in which she

identified L.J.E.'s "very bad attitude[.]" (Tr. 240). Plaintiff also highlights an August 3, 2020

Southeast Healthcare record, which reflects that she sought treatment for L.J.E.'s "increased

anger outburst, stress, [and] anxiety." (Tr. 609).[7] The Commissioner responds that the ALJ

---

[7] Plaintiff also references records not exhibited by the ALJ (Tr. 14-15, 62) and deemed irrelevant by the Appeals
Council (Tr. 2). The Court cannot consider these records. *See Cline*, 96 F.3d at 148 (citing *Cotton*, 2 F.3d at 695-
96). *See also infra* p. 14.

discussed an August 19, 2020 record from Ms. Sansone containing L.J.E.'s remarks relevant to

this functional domain (Tr. 46, referring to Tr. 618 (L.J.E. reported being "'sad' because remote

learning meant that she would not get "to see [her] friends & there[ was] a boy who want[ed] to

be [her] boyfriend.'")) and other indications from plaintiff in the Function Report that L.J.E.

socialized with family, friends, teachers, and adults (*id.*, referring to Tr. 237 (L.J.E. talks with

family and friends), Tr. 240 (L.J.E. has some capacity to make friends her own age, new friends,

and get along with others; and an unqualified ability to get along with teachers), and Tr. 241

(L.J.E. has some capacity to accept criticism or correction and an unqualified ability to obey

safety rules)).

In sum, the two pieces of evidence cited by plaintiff to support her position are, in effect,

her own lay opinions of L.J.E.'s functioning. (*See* Tr. 240, 609). By contrast, the evidence cited

by the ALJ is comprised of both plaintiff's and L.J.E.'s own assessments related to this

functional domain. (*See* Tr. 231-44, Tr. 617-18). The Court therefore concludes that the ALJ's

determination that L.J.E. had a less than marked limitation in the domain of interacting and

relating with others is supported by substantial evidence.

Based on the foregoing, plaintiff's first assignment of error should be sustained in part as

to the domain of attending and completing tasks.

### 2.  Ms. Sansone's February 9, 2021 statement

L.J.E.'s treating therapist Ms. Sansone completed a "Mental Health Specialist Statement"

on February 9, 2021—the date of the ALJ's decision. (Tr. 33-34). Plaintiff submitted this

statement to the Appeals Council, which did not exhibit it. (Tr. 2). The Appeals Council found

that it "[wa]s not material because it is not relevant to [plaintiff's] claim for disability." (*Id.*).

Plaintiff argues that the Appeals Council should have exhibited the evidence because it was new, material, and there was good cause for not submitting it prior.

Plaintiff characterizes this statement of error as a challenge to the Appeals Council's decision. The Appeals Council's decision to decline review, however, is not a final reviewable decision for purposes of 42 U.S.C. § 405(g) in the Sixth Circuit. *See Thick v. Comm'r of Soc. Sec.*, No. 2:18-cv-10154, 2018 WL 6683348, at *15-16 (E.D. Mich. Nov. 29, 2018) (summarizing authority within the Sixth Circuit holding that a federal court's review is limited to the ALJ's decision), *report and recommendation adopted*, 2018 WL 6650305 (E.D. Mich. Dec. 19, 2018). Moreover, the Court cannot consider evidence presented for the first time to the Appeals Council in deciding whether to uphold or reverse the ALJ's decision under sentence four of 42 U.S.C. § 405(g).[8] *See Cline*, 96 F.3d at 148 (citing *Cotton*, 2 F.3d at 695-96). Rather, when evidence is presented to the Appeals Council for the first time, the only issue to decide is whether, in light of that evidence, the matter should be remanded under Sentence Six of § 405(g) for further administrative proceedings.

Given the foregoing, the Court considers this assignment of error under Sentence Six of 42 U.S.C. § 405(g). Consistent with this provision, the Court may remand a case to the Social Security Administration "because new evidence has come to light that was not available to the claimant at the time of the administrative proceeding and that evidence might have changed the outcome of the prior proceeding." *Melkonyan v. Sullivan*, 501 U.S. 89, 98 (1991) (citing *Sullivan v. Finkelstein*, 496 U.S. 617, 626 (1990)). A Sentence-Six remand for consideration of additional evidence is warranted only if (1) there is good cause for the failure to incorporate this

---

[8] Plaintiff's Sentence-Six arguments are limited to Ms. Sansone's February 9, 2021 statement (Tr. 33-34). *See Kuhn*, 709 F.3d at 624. While plaintiff references other records not exhibited by the ALJ in her first assignment of error, she does not make related Sentence-Six arguments. *See supra* nn.5, 7.

evidence into the record at the prior hearing, and (2) the evidence is new and material. 42 U.S.C. § 405(g); *see Melkonyan*, 501 U.S. at 98; *see also Bass II v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007).

"A claimant shows 'good cause' by demonstrating a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ." *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001) (citing *Willis v. Sec'y of H.H.S.*, 727 F.2d 551, 554 (1984) (per curiam)). "New" evidence is evidence that was "not in existence or available to the claimant at the time of the administrative proceeding." *Id.* (quoting *Finkelstein*, 496 U.S. at 626). "Material" evidence is evidence that creates "a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence." *Id.* (quoting *Sizemore v. Sec'y of H.H.S.*, 865 F.2d 709, 711 (6th Cir. 1988)). The party seeking remand bears the burden of establishing these two remand requirements. *Hollon ex rel. Hollon v.Comm'r of Soc. Sec.*, 447 F.3d 477, 483 (6th Cir. 2006) (citing *Foster*, 279 F.3d at 357). *See also Glasco v. Comm'r of Soc. Sec.*, 645 F. App'x 432, 435 (6th Cir. 2016) (citing *Sizemore*, 865 F.2d at 711 n.1) ("Failure to establish any one of these three elements is fatal to the moving party's request.").

Ms. Sansone's Mental Health Specialist Statement is not "new" for purposes of Sentence Six. "New" evidence must not only post-date but also have been unavailable to plaintiff prior to the ALJ's decision. *See Ross v. Comm'r of Soc. Sec.*, No. 2:20-cv-1028, 2021 WL 456725, at *4 (S.D. Ohio Feb. 9, 2021) (citing *Templeton v. Comm'r of Soc. Sec.*, 215 F. App'x 458, 464 (6th Cir. 2007)) ("Evidence is new only if it was not in existence *or was not available to Plaintiff* at the time of the administrative proceeding. *Foster*, 279 F.3d at 357. . . . Dr. Wegner could have authored his opinion any time before [the ALJ's decision.]"), *report and recommendation*

15

*adopted*, 2021 WL 719028 (S.D. Ohio Feb. 24, 2021). Plaintiff offers no reason why she could not have requested Ms. Sansone's Mental Health Specialist Statement earlier than just weeks prior to the ALJ hearing. L.J.E. began therapy with Ms. Sansone more than one year prior to the ALJ hearing—in September of 2019. (*See* Tr. 34).

For the same reasons, plaintiff's argument that she "actively and diligently sought" Ms. Sansone's Mental Health Specialist Statement for purposes of demonstrating "good cause" is unpersuasive. (Doc. 9 at PAGIED 696). Beyond this representation, plaintiff offers no reason at all for failing to secure and submit Ms. Sansone's Mental Health Specialist Statement prior to the ALJ hearing. *Foster*, 279 F.3d at 357. To the contrary, the ALJ held the hearing open for one week in the hope of receiving Ms. Sansone's statement (*see* Tr. 87-88), but plaintiff did not follow up with Ms. Sansone until February 24, 2021—*two weeks after* the ALJ hearing (*see* Doc. 9 at PAGEID 696). Given the foregoing, a Sentence-Six remand is not warranted.[9]

Based on the foregoing, plaintiff's second assignment of error should be overruled.

### 3. School psychologist Nancy Weeks' opinion

Plaintiff argues that the ALJ failed to address the supportability and consistency of Dr. Weeks' opinion consistent with 20 C.F.R. § 416.920c. In particular, plaintiff notes that the ALJ focused primarily on the fact that Dr. Weeks relied on a dated Evaluation Team Report (ETR)[10] (Tr. 42, referring to Tr. 654) and otherwise included only one record citation to support his assessment (*id.*, referring to Tr. 120 (initial disability determination)). Plaintiff argues that the

---

[9] As the lack of any one factor is dispositive, it is not necessary to consider whether the evidence was "material" for purposes of a Sentence-Six remand. *See Glasco*, 645 F. App'x at 435 (citing *Sizemore*, 865 F.2d at 711 n.1) ("Failure to establish any one of these three elements is fatal to the moving party's request.").

[10] An ETR "summarizes and interprets the results of a multi-factored evaluation completed in compliance with the [school] district's identification and evaluation procedures as established by the Individuals with Disabilities Act (IDEA)." (Tr. 564). Dr. Weeks, along with a school district representative, an intervention specialist, a therapist, plaintiff, and a general education teacher comprised the evaluation team that prepared the March 2020 ETR on which Dr. Weeks relied. (*See* Tr. 594).

16

ALJ's single record reference is not substantial evidence showing that Dr. Weeks' opinion is not consistent with the evidence of record.  Plaintiff also argues that the fact that the ETR was somewhat dated is not substantial evidence that Dr. Weeks' opinion is not supported, particularly as the ALJ himself relied on even *more* dated evidence to conclude that L.J.E. was not disabled. Plaintiff emphasizes in reply that the ALJ did not adequately address the supportability of Dr. Weeks' opinion because the ALJ failed to substantively comment on the ETR on which she relied.  The Commissioner responds that the ALJ's analysis of the opinion complied with 20 C.F.R. § 416.920c; in particular, the ALJ explained that Dr. Weeks' opinion was "vague and unsupported" and inconsistent with L.J.E.'s testimony and clinical signs.

The ALJ stated as follows with respect to Dr. Weeks' opinion:

> As for other opinion evidence, the undersigned is cognizant of a treating source statement completed by Nancy Weeks, [L.J.E.]'s treating mental health specialist, on January 8, 2021 [Tr. 653-54].  Ms. Weeks opined that [L.J.E.] would have moderate difficulty acquiring and using information and caring for herself.  She also opined that [L.J.E.] would have marked restrictions with her ability to attend and complete tasks and interact with others.  The undersigned finds this assessment only partially persuasive for several reasons.  First, the assessment is vague and unsupported.  It appears that Ms. Weeks based her ratings on an evaluation report from March 2020, approximately 10 months prior to completing this statement.  Second, the medical evidence of record, including [L.J.E.]'s testimony, simply does not support marked limitations in any functional area. [L.J.E.] consistently presented for exam with a euthymic mood and normal affect. Her insight and judgment were routinely fair with no flight of ideas or pressured speech.  As noted below, [L.J.E.]'s attention span/concentration was normal throughout the relevant period, as was her ability to communicate [Tr. 120].  As such, the undersigned has determined that [L.J.E.] would have no more than "less than marked" psychological difficulties.

(Tr. 42).

For claims filed on or after March 27, 2017, new regulations apply for evaluating medical opinions.  *See* 20 C.F.R. § 416.920c (2017); *see also* 82 Fed. Reg. 5844-01, 2017 WL 168819 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15132-01, 2017 WL 1105368 (Mar.

27, 2017)). These new regulations eliminate the "treating physician rule" and deference to treating source opinions, including the "good reasons" requirement for the weight afforded to such opinions.[11] *Id.* The Commissioner will "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." *Id.* at § 416.920c(a). Rather, the Commissioner will consider "how persuasive" the medical opinion is. 20 C.F.R. § 416.920c(b).

In determining the persuasiveness of a medical opinion, the ALJ considers five factors: (1) supportability, (2) consistency, (3) relationship with the claimant, including length of treatment relationship, frequency of examinations, purpose of the treatment relationship, and examining relationship, (4) specialization, and (5) other factors that tend to support or contradict a medical opinion. *Id.* at § 416.920c(c)(1)-(5). The most important factors the ALJ must consider are supportability and consistency. *Id.* at § 416.920c(b)(2). With respect to the supportability factor, "[t]he more relevant the objective medical evidence[12] and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be." *Id.* at § 416.920c(c)(1). Similarly, "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s). . . ." *Id.* at § 416.920c(c)(2). The ALJ is required to "*explain* how [he/she] considered the supportability and consistency factors for a medical source's medical opinions" in the written decision. *Id.* at §

---

[11] For claims filed prior to March 27, 2017, a treating source's medical opinion on the issue of the nature and severity of an impairment is given controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 416.927(c)(2). *See also Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013). "The Commissioner is required to provide 'good reasons' for discounting the weight given to a treating-source opinion." *Id.* (citing 20 C.F.R. § 404.1527(c)(2)).

[12] Objective medical evidence is defined as "signs, laboratory findings, or both." 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5850.

416.920c(b)(2) (emphasis added). Conversely, the ALJ "may, but [is] not required to, explain" how he/she considered the relationship, specialization, and other factors set forth in paragraphs (c)(3) through (c)(5) of the regulation. *Id.* However, where two or more medical opinions or prior administrative findings about the same issue are equally persuasive, the ALJ must articulate how he or she "considered the other most persuasive factors in paragraphs (c)(3) through (c)(5). . . ." *Id.* at § 416.920c(b)(3). Finally, the ALJ is not required to articulate how he or she considered evidence from nonmedical sources. *Id.* at § 416.920c(d).

The supportability factor required the ALJ to consider the relevance of the "objective medical evidence and supporting explanations" for Dr. Weeks' opinion. 20 C.F.R. § 416.920c(c)(1). The ALJ found that Dr. Weeks' opinion was "vague[,]" "unsupported[,]" and based on non-contemporaneous evidence: a March 2020 ETR completed about nine months prior to her January 8, 2021 opinion. (Tr. 42). Aside from listing L.J.E.'s diagnoses, this ETR is the sole evidence on which Dr. Weeks based her opinion. (Tr. 654 ("Ratings based on result of [L.J.E.'s] most recent [ETR] (3.30.2020)")). While the ALJ did not comment on the substance of the March 2020 ETR, the Court concludes that his decision regarding the supportability factor is nevertheless based on substantial evidence. A supportable opinion "requires consideration of objective medical evidence like laboratory findings. . . ." *Tammy W. v. Comm'r of Soc. Sec.*, No. 2:22-cv-300, 2022 WL 3643604, at *9 (S.D. Ohio Aug. 24, 2022) (citations omitted) (affirming ALJ's finding that an opinion was unsupported where it lacked narrative explanation or support from corresponding treatment notes). Moreover, a lack of contemporaneous medical records from an opinion provider is an appropriate supportability consideration. *See Cremens v. Comm'r of Soc. Sec.*, No. 1:18-cv-995, 2019 WL 3553916, at *11 (N.D. Ohio Aug. 5, 2019) (quoting *Bruza v. Comm'r of Soc. Sec.*, No. 1:07-cv-1027, 2008 WL 3979261, at *6 (W.D. Mich. Aug. 4,

2008) ("The absence of progress notes and other contemporaneous medical records regarding the treatment provided by [a physician] for the period at issue entitles his unadorned opinion to virtually no weight.")).[13]  Dr. Weeks' opinion also lacks any detailed explanation of *how or why* the March 2020 ETR supported her opinion.  *See Klapp v. Comm'r of Soc. Sec.*, No. 5:20-cv-2850, 2022 WL 310228, at \*20 (N.D. Ohio Feb. 2, 2022) (holding that an opinion was unsupported when it contained only a bare listing of diagnoses and generally referenced associated symptoms) (quoting *Price v. Comm'r of Soc. Sec. Admin.*, 342 F. App'x 172, 176 (6th Cir. 2009) ("Because Dr. Ashbaugh failed to identify objective medical findings to support his opinion regarding Price's impairments, the ALJ did not err in discounting his opinion."), and *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) ("[T]he ALJ is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation.") (internal quotation marks omitted)).  Based on this authority, the Court finds that the ALJ's supportability assessment was based on substantial evidence.

Notwithstanding the above, however, the Court concludes that the ALJ's assessment of the consistency of Dr. Weeks' opinion is not supported by substantial evidence.  *See* 20 C.F.R. § 416.920c(c)(2).  On this factor, the ALJ first states that "medical evidence of record" does not support marked limitations in any functional domain, which is followed by observations untethered to particular medical records that L.J.E "consistently presented for exam with a euthymic mood and normal affect" and had fair insight and judgment without flight of ideas or

---

[13] While the *Cremens* and *Bruza* courts addressed supportability under the treating physician rule, supportability is similarly defined in the new regulations.  *Compare* 20 U.S.C. § 416.927(c)(3) ("The more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight we will give that medical opinion.  The better an explanation a source provides for a medical opinion, the more weight we will give that medical opinion.") *with id.* at § 416.920c(c)(1) ("The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.").  The Court finds that these authorities remain persuasive.

pressured speech. (Tr. 42). The ALJ also states that Dr. Weeks' opinion is inconsistent with L.J.E.'s testimony but fails to identify *any* particular testimony to support this statement. The only specific record referenced in the ALJ's assessment of Dr. Weeks' opinion follows his observation that L.J.E. had normal attention span, concentration, and ability to communicate. (*Id.*). That record is not a medical record, however, but rather a page from the initial disability determination containing a summary of several medical records between April and November of 2019. (Tr. 120). While the summary reflects some normal findings, many are not, such as: "[i]mpulsive behavior[,]" "[s]tream of thought is unusual/bizarre, impoverished[,]" "[i]ncongruent affect[,]" "[l]imited insight[,]" "[i]mpaired judgment[,]" "[a]ppearance unkempt[,]" "[i]ntermittent eye contact[,]" "[i]mpulsive activity[,]" "[t]hought process loose, [and] flight of ideas." (*Id.*).

The ALJ incorporated his later discussion of the domain of attending and completing tasks into his assessment of Dr. Weeks' opinion. (*See* Tr. 42 ("As noted below, [L.J.E.]'s attention span/concentration was normal throughout the relevant period. . . .")). This does not, however, alter the Court's conclusion because the Court has already determined that the ALJ's decision regarding that domain is not supported by substantial evidence. (*See supra* pp. 6-11). Based on the foregoing, the Court concludes that the ALJ failed to comply with 20 C.F.R. § 416.920c(c)(2) in analyzing the consistency of Dr. Weeks' opinion with the evidence from other medical sources and nonmedical sources. *Cf. Hurst v. Sec'y of H.H.S.*, 753 F.2d 517, 519 (6th Cir. 1985) (quoting *Zblewski v. Schweiker*, 732 F.2d 75, 78 (7th Cir. 1984)) ("It is more than merely 'helpful' for the ALJ to articulate reasons . . . for crediting or rejecting particular sources of evidence. It is absolutely essential for meaningful appellate review.").

21

The regulations require the ALJ to explain how he considered *both* the supportability *and* the consistency of Dr. Weeks' opinion.  20 C.F.R. § 416.920c(b)(2).  *See Shields v. Comm'r of Soc. Sec.*, 732 F. App'x 430, 440 (6th Cir. 2018) ("[A]n ALJ's failure to follow agency procedures does not constitute harmless error when it prevents us from meaningfully reviewing his or her decision. . . .").  Therefore, the ALJ's assessment of Dr. Weeks' opinion is not supported by substantial evidence, and plaintiff's third assignment of error should be sustained.

**IT IS THEREFORE RECOMMENDED THAT**:

1. Plaintiff's Statement of Errors (Doc. 9) be **SUSTAINED IN PART AND OVERRULED IN PART**;

2. The Commissioner's non-disability finding be **REVERSED AND REMANDED FOR FURTHER PROCEEDINGS** consistent with this decision.

Date: 10/15/2022 _____

Karen L. Litkovitz
United States Magistrate Judge

22

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

AMANDA E.                                           Case No. 2:21-cv-5574
o/b/o of L.J.E., a minor,                           Graham, J.
     Plaintiff,                                  Litkovitz, M.J.

     vs.

COMMISSIONER OF
SOCIAL SECURITY,
     Defendant.

### NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of

the recommended disposition, a party may serve and file specific written objections to the

proposed findings and recommendations. This period may be extended further by the Court on

timely motion for an extension. Such objections shall specify the portions of the Report objected

to and shall be accompanied by a memorandum of law in support of the objections. If the Report

and Recommendation is based in whole or in part upon matters occurring on the record at an oral

hearing, the objecting party shall promptly arrange for the transcription of the record, or such

portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the

assigned District Judge otherwise directs. A party may respond to another party's objections

**WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in

accordance with this procedure may forfeit rights on appeal. *See Thomas* v. *Arn*, 474 U.S. 140

(1985); *United States* v. *Walters*, 638 F.2d 947 (6th Cir. 1981).

23